FIRST NATIONAL BANK AND TRUST COMPANY OF EVANSTON, as Trustee, *et al.*, Plaintiffs-Appellees, v. J.P. SCHERMERHORN AND COMPANY, INC., *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—88—2456, 1—88—3470 cons.

Opinion filed December 29, 1989.

Ross S. Welch, of Chicago, for appellants.

DeHaan & Richter, P.C., of Chicago (Ronald M. DeHaan and David L. Hazan, of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiffs instituted this action in chancery against defendants seeking an accounting, an injunction, and damages based upon defendants' breach of fiduciary duties and contract obligations in relation to property held in a land trust. The trial court granted the injunctive relief and ordered an accounting. After a trial on the allegations regarding the accounting, the trial court granted plaintiffs compensatory and punitive damages but denied plaintiffs' petition for attorney fees. Defendants have appealed the award of compensatory and punitive damages, and plaintiffs have appealed the denial of their petition for fees.

First National Bank and Trust Company of Evanston was trustee under trust number R–1715, which held title to the property at issue. The beneficial interest under the trust was held by plaintiffs Margaret Schermerhorn and Ella Metoyer. Margaret Schermerhorn owned 80.8% of the beneficial interest under the trust, and Ella Metoyer owned the remaining 19.2% of the beneficial interest. Plaintiffs filed a three-count complaint on November 22, 1983, naming J.P. Schermerhorn & Co., Inc., and Jack P. Schermerhorn as defendants and seeking an injunction, an accounting, and compensatory damages. Plaintiffs later amended the complaint, asserting three additional counts against the defendants.

Defendant Schermerhorn & Co. was added as a party-defendant after Jack P. Schermerhorn voluntarily dissolved the corporate

defendant J.P. Schermerhorn & Co. and on the same day incorporated Schermerhorn & Co., transferring all of the former corporation's assets to the new corporation.

On December 2, 1983, the trial court granted plaintiffs' request for injunctive relief, entering an order restraining defendants from managing or attempting to manage the property and from interfering with plaintiffs' management thereof. On April 30, 1984, defendants filed a motion to dismiss the accounting action, asserting that they had fully accounted to plaintiffs as reflected by the monthly statements which were attached as exhibits to the motion to dismiss. The motion to dismiss was denied, and the court ordered defendants to file a formal, verified accounting. Thereafter, defendants filed an "accounting" which included the same monthly statements previously attached to the motion to dismiss along with 10 pages of "minor discrepancies" intended to correct certain errors in the "accounting." This pleading was signed by defendant Jack Schermerhorn as president of the previously dissolved J.P. Schermerhorn & Co. This accounting was stricken, and on November 3, 1987, defendants filed a verified amended accounting which indicated that defendants owed plaintiffs $489.37. Plaintiffs filed objections to the accounting regarding certain disputed items contained therein.

A trial was subsequently held on count I of the complaint, which sought an accounting. The evidence adduced at trial established that plaintiff Margaret Schermerhorn was the younger sister of defendant Jack P. Schermerhorn, and that these two parties entered into a contract by which defendants were to manage the apartment building which was the property at issue. That contract contained a provision indicating that it was to run initially for two years commencing May 15, 1978, and was to continue thereafter until terminated by either party upon 90 days' prior written notice. The contract also provided that defendants' compensation for management was to be 5% of the gross amount collected each month, and for leasing, was to be at the regular and customary rates as recognized by the Chicago Real Estate Board for all new tenants secured, and one-half such rates for renewals of leases executed while the agreement was in force.

Defendants managed the property under that contract for 5½ years, until plaintiffs terminated the contract by letter to defendants on November 9, 1983, effective immediately. At trial, witnesses for both plaintiffs and defendants testified as to the management of the plaintiffs' property and as to the specific amounts reflected in defendants' verified accounting. Plaintiffs presented the testimony of Marie Richter, a certified public accountant specializing in real estate ac-

counting. Richter examined the accounting and supporting documents submitted by defendants and prepared a report which reflected errors and omissions in defendants' accounting. Defendants presented the testimony of Neil King, who stated that the charges reflected in defendants' accounting were proper. At the conclusion of all of the evidence presented, the trial judge found that defendants' conduct in relation to management of plaintiffs' property was not a mere omission and oversight, but amounted to neglect and intentional misrepresentation. The court concluded that defendants had breached their fiduciary duty to plaintiffs. The court entered a judgment on the accounting in favor of the plaintiffs in the amount of $7,874.40, plus punitive damages to be assessed at a later date. Defendants subsequently filed a motion to reconsider the judgment, asserting that errors were made in the calculation of compensatory damages. On July 11, 1987, the trial court denied defendants' motion to reconsider the judgment and awarded plaintiffs $2,500 as punitive damages.

On May 14, 1984, four years prior to entry of the judgment, plaintiffs had filed a motion for attorney fees pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), which had been entered and continued *sine die*. On August 16, 1988, plaintiffs modified their petition for fees under section 2—611. The fee petition was denied by the trial court on October 28, 1988.

Thereafter, defendants appealed the judgments for compensatory and punitive damages, and plaintiffs appealed the denial of sanctions under section 2—611 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611).

Defendants contend that the court erred in refusing to modify the judgment for compensatory damages entered on May 2, 1988. The components of compensatory damages which are disputed by defendants include (1) a claimed error of $830 in Richter's report which indicated variances in defendants' verified accounting; (2) a bill for $250 for legal services rendered to defendants which was disallowed by the trial court; (3) a disputed amount of $157.20 for hardware bills wrongfully assessed to plaintiffs' property; (4) leasing commissions of $1,262.88 charged to plaintiffs in December 1983 which were denied by the trial court; (5) the balance of $3,265.95 for leasing commissions charged to plaintiffs in December 1983; (6) management fees of $1,372.42 charged on security deposits which were disallowed by the trial court; (7) late fees of $1,326.42 collected from tenants as a penalty for late payment of rent which was not allowed by the trial court; (8) three-month commission of $1,570.50 in lieu of 90-day notice of cancellation of the management contract.

With regard to item number 1, this alleged error was fully ad-

dressed during the examination of Marie Richter, the certified public accountant retained by plaintiffs who examined the books and records kept by defendants on the property at issue, and during the examination of Daniel Schermerhorn, the son of defendant Jack Schermerhorn and bookkeeper for the defendant management company after April 1984. Careful review of the exhibits submitted at trial and of the testimony of these two witnesses reveals that certain amounts reflected in defendants' ledger cash receipts had been erased and/or altered after Richter obtained copies of those documents and prepared schedule 5. This issue was exhaustively covered by counsel for plaintiffs and for defendants and was considered by the trial judge. Upon review of all of the evidence presented, the court found that, in fact, there was no discrepancy and that the amounts reflected in schedule 5 were accurate. Accordingly, the court declined to modify the compensatory damage award in this regard.

Item number 2 was properly disallowed by the court in light of the language of paragraph 5(b) of the management contract. That provision is intended to indemnify defendants for legal fees incurred in representing the plaintiffs' interests in managing the property at issue. Fees incurred to defend the instant action are not allowed under that provision.

The trial court found that the items numbered 3, 4, 5, 7, and 8 were not justified under the contract provisions or under the evidence presented. These matters were exhaustively addressed by counsel and carefully considered by the court. There is no evidence in the record which would compel a reversal of the court's determination of these issues.

In regard to item number 6, defendants argued that they were justified in charging a commission on security deposits at the time they were received and again when they were applied as rent. In support of this contention, defendants presented the testimony of Neil King, an expert in real estate management, who stated that such charges were customary. This evidence was contradicted by Marie Richter, who testified that she specialized in real estate accounting and had never seen double commissions charged on security deposits before. Richter also testified that such double commissions were improper under the accepted definition of "income" used by professional accountants. Jack P. Schermerhorn testified that Margaret Schermerhorn was aware that these commissions, as well as the late fees, were being collected by defendants and had agreed to them. Margaret Schermerhorn, however, specifically denied having prior knowledge of such charges and denied that she had agreed to them. The trial court

found that defendants were not entitled to charge double commissions on the security deposits and held that defendants' conduct amounted to a breach of their fiduciary duty to plaintiffs. This issue was also fully explored at trial, and the record contains no evidence indicating that the trial court's decision should be reversed.

■■ ■ It is well established that the determination of damages by a trial court sitting without a jury will not be set aside unless it is manifestly erroneous. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 148-49, 281 N.E.2d 323, 326; *In re Estate of Chaitlen* (1989), 179 Ill. App. 3d 287, 292, 534 N.E.2d 482, 485.) Absolute certainty is not required, and all that the law requires is that there be an adequate basis in the record for the court's determination. (*Schatz*, 51 Ill. 2d at 147, 281 N.E.2d at 325-26; *Chaitlen*, 179 Ill. App. 3d at 292, 534 N.E.2d at 485.) Review of the record in the instant case reveals that the trial court properly considered and evaluated the evidence relating to the components of the compensatory damages due plaintiffs. The trial court's determination was not manifestly erroneous and will not be set aside.

■■ Defendants assert the trial court erred in awarding punitive damages. We agree. Plaintiffs did not request punitive damages in the prayer for relief in count I, which sought an accounting. The evidence adduced at trial was limited to the allegations raised in count I. Consequently, the issue of punitive damages was not before the court. The record reveals that plaintiffs have requested punitive damages in counts III, IV, and VI of the complaint. We believe that imposition of punitive damages, if justified, would be appropriate only after trial on these counts or after notice and a hearing on this issue.

Finally, we consider plaintiffs' assertion that the court erred in denying their petition for attorney fees where defendants abused their right of free access to the courts in violation of section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). Plaintiffs contend that the defendants made sworn statements in pleadings which were later proven untrue.

■■ Defendants claim that plaintiffs' petition was untimely because it was not filed within 30 days of the entry of the judgment. This claim is without merit because plaintiffs originally filed their petition on May 14, 1984, and it was continued *sine die* and amended and reasserted after judgment. Thus, we find the petition was timely.

■■ Illinois courts have held that section 2—611 is penal in nature, and its provisions should be invoked only in cases falling strictly within its terms, and a party seeking to recover fees under this section has the burden of proving that his opponent made untrue allega-

tions without reasonable cause. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77, 535 N.E.2d 876, 883.) The decision whether to allow recovery under this section is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of discretion. *Wernick*, 127 Ill. 2d at 77-78, 535 N.E.2d at 883.

Plaintiffs contend that the court should have granted their petition for fees based upon the defendants' denial that expenses for other properties were attributed to plaintiffs' property; defendants' denial that a fiduciary relationship existed; defendants' dilatory behavior in filing a motion to dismiss, their assertion in that motion that defendants had fully accounted to plaintiffs, and the inclusion of monthly statements containing inaccurate figures which were later corrected; the verification of the accounting by Jack P. Schermerhorn as president of J.P. Schermerhorn & Co., Inc., which had previously been voluntarily dissolved; and the need for a trial as a result of defendants' conduct.

■ Although the trial judge in the instant case found that defendants had breached their fiduciary duty to plaintiffs, he specifically found that an award of fees under section 2—611 was inappropriate. Review of the record supports this conclusion. Plaintiffs have failed to prove that the defendants' statements were untrue and were made without reasonable cause. Testimonial inconsistencies are not a sufficient basis for recovery under section 2—611, and the determination of the trial judge must be afforded great deference. (*Wernick*, 127 Ill. 2d at 82, 535 N.E.2d at 886.) The conduct complained of by plaintiffs was considered and evaluated by the trial judge, and he determined that plaintiffs were not entitled to attorney fees. The totality of the circumstances before the court, including the examples of misconduct cited by plaintiffs, are insufficient to support an award of fees and expenses under section 2—611. Thus, the trial judge did not abuse his discretion in denying plaintiffs' petition.

For the foregoing reasons those portions of the order granting plaintiffs compensatory damages and denying plaintiffs' petition for fees are affirmed; that portion of the order granting plaintiffs punitive damages is reversed.

Affirmed in part; reversed in part.

EGAN, P.J., and McNAMARA, J., concur.